In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3859

Hattie M. Morgan, et al.,

Plaintiffs-Appellants,

v.

Joint Administration Board, Retirement Plan
of The Pillsbury Company and American
Federation of Grain Millers, AFL-CIO-CLC,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 00 C 6--David F. Hamilton, Judge.

Argued April 6, 2001--Decided October 11, 2001

  Before Flaum, Chief Judge, and Posner and
Williams, Circuit Judges.

  Posner, Circuit Judge.  The plaintiffs
appeal from the dismissal for failure to
state a claim of their suit under the
Americans with Disabilities Act against
the administrator of a retirement plan
negotiated between their former employer
and their union. The plan provides
separately for employees who retire upon
reaching age 55 or 65 ("early" and
"normal" retirees, respectively) and for
those including the plaintiffs who retire
early because they have become totally
disabled from working ("disability"
retirees). In 1999 the plan was amended
to grant a cost of living increase to
early and normal retirees but not to
disability retirees, precipitating this
suit.

  The employment provisions of the ADA
(Title I) grant rights only to employees
who, though they have a disability, are
able to perform the essential functions
of their job even if only with some
accommodation to their disability. 42
U.S.C. sec.sec. 12111(8), 12112(a);
Sutton v. United Airlines, Inc., 527 U.S.
471, 477-78 (1999). The plaintiffs are
disabled, but they are not employees or
prospective employees who want to work

notwithstanding their disability. They are totally disabled. They cannot work. Several courts, ours included, have held that retired and other former workers are not protected by the employment provisions of the Act. EEOC v. CNA Ins. Cos., 96 F.3d 1039, 1041, 1045 (7th Cir. 1996); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1108-09 (9th Cir. 2000); Gonzales v. Garner Food Services, Inc., 89 F.3d 1523, 1526-27 (11th Cir. 1996). How could they be? They cannot perform the essential functions of their job, and therefore they have no rights under the statutory provisions cited above.

The plaintiffs ask us to reexamine our position in the light of a subsequent decision by the Supreme Court involving what they claim is a parallel issue under Title VII of the Civil Rights Act of 1964. Robinson v. Shell Oil Co., 519 U.S. 337, 345-46 (1997), has persuaded two of our sister circuits that retired employees are protected by the ADA after all. Castellano v. City of New York, 142 F.3d 58, 66-70 (2d Cir. 1998); Ford v. Schering-Plough Corp., 145 F.3d 601,-605-08 (3d Cir. 1998). Robinson's employer fired him, and he filed a charge with the EEOC, claiming that he had been fired because of his race. Later his now-former employer gave him a negative employment reference, allegedly in retaliation for his having filed the charge. As the Court explained, not to let people in Robinson's position sue for retaliation "would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims." 519 U.S. at 346.

We anticipated and discussed the difference between that situation and the one here in the case the plaintiffs ask us to overrule. EEOC v. CNA Ins. Cos., supra, 96 F.3d at 1044-45. The difference is stark. Allowing former employees to complain about postemployment discrimination that does not involve retaliation would actually hurt them, in the same way that denying them protection against retaliation would hurt them: it would create perverse incentives. Since there is no legal requirement that

employers offer disability benefits as part of their menus of fringe benefits, compelling employers who do to maintain them in lockstep with other benefits would deter their provision. The employer would tell its employees to buy their own disability insurance or to rely on social security disability benefits should they become disabled. Since workers with a disability are more likely than other workers to become totally disabled and have to retire early, an interpretation of the Act that discouraged employers from offering disability benefits would make the workplace less attractive to such workers. The purpose of the Act's employment provisions is to draw workers with a disability into the workforce. 42 U.S.C. sec. 12101(a)(8); Tyndall v. National Education Centers, Inc. of California, 31 F.3d 209, 215 (4th Cir. 1994); Bonnie Poitras Tucker, Federal Disability Law in a Nutshell 5-6 (1998). The interpretation for which the plaintiffs contend would have the opposite effect.

We have been talking practical effects but the language of the Americans with Disabilities Act also supports differentiating retaliation plaintiffs from discrimination plaintiffs. The statutory protections against discrimination are protections of "[otherwise] qualified individual[s] with a disability," 42 U.S.C. sec. 12112(a), but the retaliation provision protects individuals, period: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. sec. 12203(a). The plaintiffs in our case are certainly individuals, but they are not qualified individuals with a disability, that is, qualified (able) to work with or without a reasonable accommodation to their disability; they are totally disabled and so utterly unable to work.

The plaintiffs argue that this is a special case because the disability retirement provisions are contained in the same plan as the normal retirement benefits and are calculated the same way except for the difference in eligibility

(age 65 in the case of normal benefits, total disability in the case of disability benefits). But so what? The plaintiffs would rightly not concede that an employer could avoid the rule for which they contend by the simple expedient of having separate disability plans, or different formulas for computing benefits, for normal and disability retirees. The logic of the plaintiffs' position is that disability retirees must be treated in all respects as well as normal retirees are treated regardless of purely formal, readily alterable characteristics of the plan.

"Treated in all respects as well as normal retirees must be treated. . . ." But how is that to be determined? On the one hand, a normal retiree will get a larger pension than a disability retiree because he has more years of service. On the other hand, a worker who becomes totally disabled can obtain benefits with only nine and a half years of service. He gets a smaller pension, but gets it sooner, maybe much, much sooner, in which event he may--despite the absence, of which the plaintiffs complain, of a cost of living increase--be treated better than a normal retiree. We doubt that the framers of the ADA wanted the courts to attempt such elusive comparisons.

The plaintiffs have, however, another string to their bow. They appeal to the public accommodations provisions of the Act (Title III), which forbid discriminating against disabled persons with respect to access to places of public accommodation. 42 U.S.C. sec. 12182(a); PGA Tour, Inc. v. Martin, 121 S. Ct. 1879, 1889-90 (2001). The defendant asks us to interpret "public accommodation" literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store. Doe v. Mutual of Omaha Ins. Co., 179 F.3d 557, 558-59 (7th Cir. 1999); to the same effect, see Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc., 37 F.3d 12, 19 (1st Cir. 1994); contra, Weyer v. Twentieth Century Fox Film Corp., supra, 198 F.3d at 1114-15; Ford

v. Schering-Plough Corp., supra, 145 F.3d at 612; Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1010-11 (6th Cir. 1997) (en banc). The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public. Doe v. Mutual of Omaha Ins. Co., supra, 179 F.3d at 559; Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England, Inc., supra, 37 F.3d at 19.  The retirement plan was not offered to the public, however. It was negotiated between the employer and the representative of its employees. No one could walk in off the street and ask to become a plan participant. The plan was a private deal, not a public offering, and so the plaintiffs' public accommodations claim fails as well.

Affirmed.