**Nora HESTON Plaintiff,**

v.

**UNDERWRITERS LABORATORIES, INC. Defendant.**

**No. 1:02 CV 417.**

United States District Court, M.D. North Carolina.

Dec. 12, 2003.

Jeffrey L. Starkweather, Pittsboro, NC, Nora Heston, pro se, Raleigh, NC, for Plaintiff.

Cecil W. Harrison, Jr., Poyner & Spruill, L.L.P., Raleigh, NC, for Defendant.

## ORDER

TILLEY, District Judge.

On March 14, 2003, the United States Magistrate Judge's Recommendation to deny Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) was filed [Doc. # 12]. Notice was served on the parties pursuant to 28 U.S.C. § 636(b). Defendant filed a timely Objection to the Recommendation [Doc. # 14]. Having reviewed the Magistrate Judge's Recommendation and the Defendant's Objection, it is determined that the Court accepts the recommendation in its entirety. For the reasons stated in the Recommendation, IT IS ORDERED that Defendants' Motion to Dismiss is DENIED.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ELIASON, United States Magistrate Judge.

This case comes before the Court on defendant's motion to dismiss plaintiff's complaint. The motion, which is brought pursuant to Fed.R.Civ.P. 12(b)(1) and (6), has now been fully briefed and is ready for decision.

## Facts

The facts, as alleged in plaintiff's complaint, are as follows. Plaintiff states that she was employed by defendant, mainly as a word processor, from 1993 until 1999. A few days after plaintiff began her employment, she suffered a fractured vertebrae in a car accident. Defendant was aware of this and considered her to be an employee with a disability. Accordingly, it allowed her to work half-days as an accommodation. In November of 1993, plaintiff had surgery to fuse the vertebrae and then returned to work with four-hour days until May of 1994 when she returned to full time duty.

In July of 1998, plaintiff injured her back while exercising. She was found to be temporarily totally disabled by her medical providers and defendant placed her on six-month disability. In January of 1999, defendant required her to have a medical exam. While her doctors declared her to still be totally disabled, defendant's doctors found that she could return to work without restrictions. In May of 1999, the parties reached an agreement allowing her to return to work with a restriction on the time she spent in a sitting position. When plaintiff returned, defendant assigned her to what she claims was a lower-level position in the mailroom, rather than her old word processing position. Because of the reassignment, she resigned. Plaintiff states that she did not reveal any of the details of her impairment to her co-workers or supervisors, except as needed to obtain accommodations or disability status and leave.

After leaving her job with defendant, plaintiff sought work in temporary positions, hoping that they would turn into permanent positions. In a number of instances, she allegedly received good reviews and was asked to apply for full time positions, only to be turned down following a reference check with defendant. Suspicious, she hired a private detective to contact defendant for a reference. One of her former supervisors, who still works for defendant, provided the detective with a positive reference as to her work, but a negative reference due to her disability. Plaintiff now alleges based on information and belief that similar references were given to her potential employers. She claims that the portions of the references that were based on her disability are a violation of her medical confidentiality rights as set out in the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (ADA).

## Discussion

Defendant has made a motion pursuant to Fed.R.Civ.P. 12(b)(1) and (6) asking that plaintiff's complaint be dismissed. Federal Rule of Civil Procedure 12(b)(1) deals with subject matter jurisdiction. In deciding a motion made under this subsection, the Court must assume that all factual allegations in plaintiff's complaint are true. *Adams v. Bain,* 697 F.2d 1213 (4th Cir. 1982). As for a motion to dismiss made under Fed.R.Civ.P. 12(b)(6), it cannot succeed " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.), *cert. denied,* 510 U.S. 828, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993), *quoting Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Further, the Court must assume that the allegations in the complaint are true and construe them in the light most favorable to plaintiff. *Id.*

Defendant raises one ground for dismissing plaintiff's lawsuit by asserting she is not a person covered by the ADA. As defendant correctly states, 42 U.S.C. § 12112(a) prevents discrimination against

a "qualified individual with a disability."[1] In turn, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). According to defendant, the definition of "qualified individual" is so written that it should be construed to only include those **currently** holding or seeking to hold a position with a given employer. Because plaintiff is a **former** employee of defendant, defendant concludes that she cannot satisfy the definition of "qualified individual" and, therefore, cannot sue under the ADA.

Plaintiff has two responses to defendant's argument. Her first one is that she disagrees with defendant's statement that she is not a "qualified individual" in relation to defendant solely because she is not currently employed by or seeking employment with defendant. Unfortunately, neither the United States Supreme Court nor the Fourth Circuit Court of Appeals have ruled on this issue. Moreover, the parties cite to four courts of appeals that have ruled on the issue. Two find that the definition is limited as defendant claims, while two support plaintiff's argument. *Compare Morgan v. Joint Admin. Bd., Retirement Plan of Pillsbury Co. and American Federation of Grain Millers, AFL–CIO–CLC,* 268 F.3d 456 (7th Cir. 2001) (former employees cannot be "qualified individuals"), *and Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104 (9th Cir.2000)(same), *with Ford v. Schering–Plough Corp.,* 145 F.3d 601 (3rd Cir. 1998), *cert. denied,* 525 U.S. 1093, 119 S.Ct. 850, 142 L.Ed.2d 704 (1999) (former employees can be "qualified individuals"), *and Castellano v. City of New York,* 142 F.3d 58 (2d Cir.1998)(same). The Court, on its own, has found one more case which, arguably, supports defendant's position. *Gonzales v. Garner Food Services, Inc.,* 89 F.3d 1523 (11th Cir.1996), *cert. denied. sub nom, Wood v. Garner Food Services, Inc.,* 520 U.S. 1229, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997). Each side claims that the decisions supporting their point of view are the correct and better reasoned cases.

■ While the question posed by the split in case law is an interesting one, it is also one that this Court need not attempt to answer. This is because of plaintiff's second argument, which is that she is suing under 42 U.S.C. § 12112(d)[2], rather

---

1. 42 U.S.C. § 12112(a) provides:

   No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
   42 U.S.C. § 12112(a) (1995).

2. 42 U.S.C. § 12112(d) provides:

   **(d) Medical examinations and inquiries**
   **(1) In General**
   The prohibition against discrimination as referred to in subsection (a) of this section shall include medical examinations and inquiries.

   . . . .
   (4) Examination and inquiry

   . . . . .
   **(B) Acceptable examinations and inquiries**
   A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.
   **(C) Requirement**
   Information obtained under subparagraph (B) regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).
   42 U.S.C. § 12112(d) (1995).

than 42 U.S.C. § 12112(a). According to plaintiff, subsection (d), unlike subsection (a), does not require that a person be a "qualified individual" in order to have a cause of action. For several reasons, the Court finds that she is correct.

Subsections (d)(2),(3) and (4) deal, respectively, with pre-employment medical examinations, entrance examinations, and health program examinations which may be given to employees and applicants prior to and during employment. The nature and purpose of the examinations are, thus, limited. Not only must examinations be performed according to the guidelines set out in the statute, but also the "information obtained regarding the medical condition or history" of the applicant or employee must be "collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record." 42 U.S.C. § 12112(d)(3)(B). The information can only be released under certain narrow circumstances, such as to inform supervisors of restrictions for accommodations, to allow for emergency treatment, and to aid government officials investigating compliance with the ADA.

Nothing in subsection (d) states that the information can be released as part of a job reference to prospective employers. Moreover, nothing in subsection (d) suggests that its coverage is restricted to "qualified individuals." Subsection (d) does not even use the term "qualified individual," but rather speaks in terms of "employees" and "job applicants." Further-more, the focus of subsection (d) is on protecting "information" which makes its purpose slightly different than subsection (a) which seeks to protect against discriminatory actions affecting qualified individuals.

Plaintiff's reading of the statute is also supported by case law. All three circuit courts of appeals that have examined the question of whether a plaintiff must be a "qualified individual" to sue under subsection (d) have answered the question in the negative. *Cossette v. Minnesota Power & Light*, 188 F.3d 964 (8th Cir.1999); *Fredenburg v. Contra Costa County Dept. of Health Services*, 172 F.3d 1176 (9th Cir. 1999); *Griffin v. Steeltek, Inc.*, 160 F.3d 591 (10th Cir.1998), *cert. denied*, 526 U.S. 1065, 119 S.Ct. 1455, 143 L.Ed.2d 542 (1999); *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221 (10th Cir.1997). Defendant has cited to no contrary case law.

■ Finally, as the other courts have noted, plaintiff's reading of the statute is consistent with the obvious overall purpose of the subsection, which is to tightly regulate most job related health exams. Put another way, " '[i]t makes little sense to require an employee to demonstrate that he has a disability to prevent his employer from inquiring as to whether or not he has a disability.' " *Cossette* at 969, *quoting Griffin* at 594.[3]

---

3. Defendant argues in its reply brief that subsection (d) only covers "qualified individuals" because subsection (d)(1) makes a general reference back to subsection (a). It reads: "The prohibition against discrimination as referred to in subsection (a) ... shall include medical examinations and inquiries." Therefore, plaintiff argues that subsection (d) only applies to "qualified individuals" who are given medical examinations. Defendant cites no case law in support of its claim. In fact, this argument has been considered and rejected by at least two other courts. *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 969 (8th Cir.1999); *Fredenburg v. Contra Costa County Dept. of Health*, 172 F.3d 1176, 1181–83 (9th Cir.1999). This Court finds those decisions to be persuasive. Also, as will be discussed next, a reading of subsection (d) in the context of the entire statute and its purpose shows the proposed construction to be an unreasonable one.

■ Of course, simply finding that potential plaintiffs under subsection (d) are not limited to "qualified individuals" does not answer the ultimate question of whether former employees can be plaintiffs under that subsection. It would be possible to construe the statute as only extending to job applicants and "current" employees, whether disabled or not. Once again, however, the Court finds that this issue must be resolved in plaintiff's favor.

Neither party has cited any case dealing with a plaintiff attempting to sue a former employer for violations of subsection (d) based on violations alleged to have occurred after her employment ended. Nor is the Court aware of one. Still, there are several reasons to find in plaintiff's favor.

■ Even though nothing in subsection (d) explicitly grants coverage to former employees, nothing in the plain language of subsection (d) indicates that they are not covered. There are no qualifiers, such as "qualified individual" or "current employee." The ambiguity requires the Court to look to the legislative history for guidance but, in all events, the statute may not be construed in a fashion that would thwart its obvious purpose. *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 603 (4th Cir.1999), *cert. denied*, 528 U.S. 1117, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000). The parties have not presented any helpful legislative history and, therefore, the Court will consider whether the obvious purpose of subsection (d) would be violated by adopting defendant's proposed construction.

■ The obvious purpose of subsection (d) is to limit the gathering and use of medical information as one of the ways to reduce the possibility of discrimination. If medical information is gathered, it must be treated as confidential and used only in accordance with subsection (d). 42 U.S.C. § 12112(d)(4)(C). The prohibition is not limited to any class of individuals, as is subsection (a). When employers gather information under subsection (d), this triggers the duty of confidentiality with respect to the person about whom the information is gathered, whether disabled or not. As pointed out previously, the statute most obviously disfavors disability medical examinations by allowing them only in narrow circumstances and only if confidentiality is ensured. The specified exceptions to this duty are limited, and a post-employment request for references from prospective future employers is not one of the exceptions. 42 U.S.C. § 12112(d)(3)(B).

The need to protect this sensitive information does not end upon the termination of employment. To that end, the portions of the statute mandating the confidentiality of certain medical information set no time limits on the period of confidentiality. Therefore, the statute is most reasonably read to impose a continuing duty of confidentiality, and the beneficiary of the duty is the person about whom the information has been collected, whatever their current relationship with the employer may be.

■ Finally, although there may be no case law directly on point, the Supreme Court's decision in *Robinson v. Shell Oil Company*, 519 U.S. 337, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), indirectly supports a reading of subsection (d) which would allow suits by former employees. There, in a Title VII context, the Supreme Court found that the definition of the term "employee" while ambiguous, should be interpreted to include former employees with respect to complaints of retaliation in order to effectuate the essential purpose of the legislation and to prevent perverse results permitting the use of post-employment threats to deter reporting of violations. This same reasoning applies to a person's medical information protected un-

der the ADA, and especially with respect to job references. Protecting the medical information only while the person is employed defeats the purpose of confidentiality and allows for post-employment retaliation. Although the plaintiff in this case has not alleged that defendant gave any negative reference with an intent of retaliation in mind, the Court finds that there need not be a motive of retaliation when confidential medical information is revealed. Just as the employer has no right to retaliate,[4] it has no right to reveal confidential information for use in a post-employment job reference. Therefore, the language used in the statute and the purpose of the protection lead one to conclude that plaintiff's claim is covered, even though she is now a former employee and not disabled. Defendant's motion to dismiss should be denied.

**IT IS THEREFORE RECOMMENDED** that defendant's motion to dismiss (docket no. 3) be denied.

March 14, 2003.

---

4. The ADA has a separate retaliation provision (42 U.S.C. § 12203) which protects all individuals and not just qualified individuals. *Morgan v. Joint Admin. Bd., Retirement Plan of Pillsbury Co. and American Federation of Grain Millers, AFL–CIO–CLC,* 268 F.3d 456, 458 (7th Cir.2001). The fact that other provisions of the ADA provide coverage of even former employees provides support for the view that Congress did intend coverage beyond "qualified individuals" in appropriate circumstances.