# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

––––––––––

No. 15-31018

––––––––––

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2016

Lyle W. Cayce
Clerk

EMMETT MAGEE, Individually and on behalf of all others similarly situated,

> Plaintiff - Appellant

v.

COCA-COLA REFRESHMENTS USA, INCORPORATED,

> Defendant - Appellee

––––––––––––––––––––

Appeal from the United States District Court
for the Eastern District of Louisiana

––––––––––––––––––––

Before WIENER, CLEMENT, and COSTA, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Emmett Magee brought this action on behalf of himself and others similarly situated against Defendant-Appellee Coca-Cola Refreshments USA, Inc. ("Coca-Cola"), asserting claims under Title III of the Americans with Disabilities Act ("ADA"). Specifically, Magee alleges that Coca-Cola owns and operates glass-front vending machines in public spaces and that those machines are not accessible to him and others who are blind. Coca-Cola moved to dismiss Magee's complaint, contending that the vending machines it operates are not "places of public accommodation" as required by the applicable provisions of the ADA. The district court agreed and dismissed Magee's

## No. 15-31018

complaint, holding that Coca-Cola's vending machines are not themselves "places of public accommodation." We affirm.

### I.

Magee alleges the following facts, which we assume to be true at this stage.[1] Coca-Cola's glass-front vending machines are self-service, fully automated machines that dispense bottles and cans of Coca-Cola sodas, as well as juices, energy drinks, and waters. According to Magee, Coca-Cola unveiled these particular machines in 2000. They are equipped with an array of different features, including the ability to accept payment from smart phones and other near-field communication devices, wireless internet capabilities, credit and debit card processing, motion sensing technology, and onboard computer systems.

Magee claims that, despite having these features, Coca-Cola's vending machines lack any meaningful accommodation for use by the blind. This, he says, is because the machines are equipped with an entirely visual interface: The machines use an alphanumeric keypad—which does not contain tactile indicators differentiating between letters and numbers—that requires users to identify and input selection codes of the beverage they wish to purchase. Those selection codes are printed and placed below each beverage inside the machine and are visible through the machine's glass front. According to Magee, this system renders the blind (1) unable to ascertain the products available inside the machines, (2) unable to identify the selection code of any available products, (3) unable to input knowingly a selection into the alphanumeric keypad, and (4) ultimately unable to purchase products.

---

[1] *See Chrissy F. by Medley v. Miss. Dep't of Pub. Welfare*, 883 F.2d 25, 26 (5th Cir. 1989).

No. 15-31018

Magee further contends that Coca-Cola's machines could be made accessible to the blind in several ways: (1) retrofitting them with an audio interface system and a tactile alphanumeric keypad; (2) developing a smartphone application capable of displaying a non-visual representation of the contents and corresponding prices for each vending machine; or (3) imprinting a non-visually displayed toll-free hotline that the visually-impaired could call for assistance in purchasing a beverage.

Magee suffers from macular degeneration, a condition that has rendered him legally blind. He encountered one of Coca-Cola's vending machines at East Jefferson General Hospital in Metairie, Louisiana, in February 2014. He was unable to use the machine because it did not offer a non-visual means of operation. He states that he visited that hospital multiple times before and that he reasonably expects to visit it again in the future. Magee adds that, in April and May 2015, he was unable to use Coca-Cola's vending machines at a bus station in New Orleans, Louisiana. He regularly uses that bus station and reasonably expects to use it in the future.

In suing Coca-Cola on behalf of himself and others similarly situated, Magee asserts that Coca-Cola discriminates against blind individuals by denying them access to its products in the glass-front vending machines, in violation of Title III of the ADA. According to Magee, the vending machines are themselves "places of public accommodation" under the statute, making Coca-Cola liable as the owner and operator of those machines. Magee has not filed claims against the hospital or bus station where he encountered the vending machines.

Coca-Cola moved to dismiss Magee's complaint, arguing that it is not subject to the ADA because the vending machines that it owns and operates are not themselves "places of public accommodation." The district court agreed, and granted Coca-Cola's motion to dismiss. Magee now appeals.

3

No. 15-31018

## II.

We review de novo a district court's grant of a motion to dismiss.[2] Magee maintains on appeal, and as he did in the district court, that Coca-Cola's vending machines are themselves "places of public accommodation" under Title III of the ADA. He does so because to be liable, Coca-Cola must own, lease, lease to, or operate a place of public accommodation.[3] Magee acknowledges that Coca-Cola's only connection to the hospital and bus station where the relevant vending machines are located is its ownership, operation, and maintenance of those vending machines. He contends initially that the vending machines are "places of public accommodation" under a plain reading of the statute. He asserts in the alternative that the Department of Justice's ("DOJ") regulations clarify that vending machines are "places of public accommodations" under Title III.

> Title III of the ADA states:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.[4]

Thus, to be liable under the statute, Coca-Cola must be a "person who owns, leases (or leases to), or operates a place of public accommodation."[5] And Coca-Cola's vending machines must be places of public accommodation because Magee alleges no facts suggesting Coca-Cola has any other connection to the hospital or bus station where those machines are located.

---

[2] *Boyd v. Driver*, 579 F.3d 513, 515 (5th Cir. 2009).

[3] *See* 42 U.S.C. § 12182(a).

[4] *Id.*

[5] *Id.*

No. 15-31018

The statute does not define "place of public accommodation," but it does define "public accommodation."[6] Under the statute, "private entities are considered public accommodations . . . if the operations of such entities affect commerce" and fall into one of twelve enumerated categories.[7] Magee contends that Coca-Cola's vending machines fall under the category defined in subsection (E)—"a bakery, grocery store, clothing store, hardware store, shopping center, or *other sales* or rental *establishment*"—because, he insists, a vending machine is a "sales establishment."[8]

The DOJ's regulations define "place of public accommodation" to mean "a facility operated by a private entity whose operations affect commerce and fall within at least one" of twelve enumerated categories, substantially similar to those provided by 42 U.S.C. § 12181(7).[9] Accordingly, under those regulations, a vending machine is only a "place of public accommodation" if (1) it is a "facility," and (2) its operations fall within a category of public accommodation. Under those regulations, a "facility" is "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."[10] Magee contends that the vending machines are "equipment," "property," and "structures." He relies on that regulation's category of public accommodation—"A bakery, grocery store, clothing store,

---

[6] *See id.* § 12181(7).

[7] *Id.* § 12181(7)(A)–(L).

[8] *Id.* § 12181(7)(E) (emphasis added). In his complaint and before the district court, Magee also asserted that Coca-Cola's vending machines fall under the category of "a restaurant, bar, or *other establishment serving food or drink.*" *Id.* § 12181(7)(B) (emphasis added). On appeal, however, Magee has abandoned this argument, relying exclusively on § 12181(7)(E).

[9] 28 C.F.R. § 36.104.

[10] *Id.*

No. 15-31018

hardware store, shopping center, or other sales or rental establishment"—which category is identical to that in the statute.[11]

The district court acknowledged initially that the vending machines, "which [are] clearly personal property or equipment at [the hospital and bus station], must comply with the ADA so that patrons with disabilities do not suffer discrimination."[12] Magee's complaint failed, according to the district court, because "the defendant he chose to sue for [the] purposes of [pursuing] a nationwide class action, does not own, lease, or operate the place of public accommodation where he encountered" the vending machines.[13] The district court concluded that, because the vending machines are "not akin to any of the twelve specific categories of places of public accommodation listed in the statute and the federal regulations," Magee "is attempting to expand the term 'place of public accommodation' well beyond its statutory definition in order to sue a defendant amenable to nationwide relief."[14]

Magee contends on appeal that Coca-Cola's vending machines are "places of public accommodation" because they are "sales establishments" under 42 U.S.C. § 12181(7)(E), so we begin with the text of that statute. Neither it nor the regulations define the term "sales establishment." We therefore turn to that term's plain meaning.[15]

Title 42 U.S.C. § 12181(7) uses the term "establishment" six times:

> **(A)** an inn, hotel, motel, or other place of lodging, except for an *establishment* located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the

---

[11] *Compare* 28 C.F.R. § 36.104 *with* 42 U.S.C. § 12181(7)(E).

[12] *Magee v. Coca-Cola Refreshments USA, Inc.*, 143 F. Supp. 3d 464, 467 (E.D. La. 2015).

[13] *Id.*

[14] *Id.*

[15] *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) ("The appropriate starting point when interpreting any statute is its plain meaning.").

proprietor of such *establishment* as the residence of such proprietor;

**(B)** a restaurant, bar, or other *establishment* serving food or drink;

. . .

**(E)** a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental *establishment*;

**(F)** a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service *establishment*;

…

(**K)** a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center *establishment*[.][16]

Magee invokes only subsection (E): "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment[.]"[17]

Under the principle of *noscitur a sociis*, "a word is known by the company it keeps."[18] Similarly, the canon of *ejusdem generis* instructs that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed."[19] Applying these principles, we are convinced that Coca-Cola's vending machines are not "sales establishments" under 42 U.S.C. § 12181(7)(E). The relevant portion of that statute uses the term "sales establishment" following a list of retailers occupying physical stores.[20] Other courts, including the Third,

---

[16] *See* 42 U.S.C. § 12181(7)(A), (B), (E), (F), & (K) (emphasis added).

[17] *Id.* § 12181(7)(E).

[18] *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961).

[19] *Ejusdem generis*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[20] *See* 42 U.S.C. § 12181(7)(E).

Sixth, and Ninth Circuits, have recognized that "[e]very term listed in §
12181(7) . . . is a physical place open to public access."[21] "They are actual,
physical places where goods or services are open to the public, and places where
the public gets those goods or services."[22] Although the term "establishment"
could possibly be read expansively to include a vending machine, a vending
machine is not akin to any of the listed examples. Indeed, rather than falling
within any of those broad categories of entities, vending machines are
essentially always found inside those entities along with the other goods and
services that they provide.[23]

The common meaning of the term "establishment" also supports Coca-
Cola's view that a "sales establishment" includes not only a business but also
the physical space that it occupies. *Merriam-Webster's Collegiate Dictionary*
defines "establishment" as "a place of business or residence with its furnishings
and staff."[24] It relevantly defines "place" as "a building or locality used for a
special purpose."[25] *Webster's Third New International Dictionary* defines
"establishment" as a "sizable place of business or residence together with all
the things that are an essential part of it (as grounds, furniture, fixtures,

---

[21] *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997); *see also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613–14 (3d Cir. 1998) ("[W]e do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to be ambiguous as to their meaning."); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114–15 (9th Cir. 2000).

[22] *Weyer*, 198 F.3d at 1114.

[23] In following the Third, Sixth, and Ninth Circuits, we acknowledge our departure from the precedents of the First, Second, and Seventh Circuits, which have interpreted the term "public accommodation" to extend beyond physical places. *See Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 18–20 (1st Cir. 1994); *Pallozi v. Allstate Life Ins. Co.*, 198 F.3d 28, 31–33 (2d Cir. 1999); *Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed. of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001). As the Third and Sixth Circuits have explained, that interpretation ignores the doctrine of *noscitur a sociis*. *See Ford*, 145 F.3d at 614; *Parker*, 121 F.3d at 1014.

[24] *Establishment*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1999).

[25] *Place*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1999).

retinue, employees)."[26] It too defines "place" as "a building or locality used for a special purpose."[27] The *American Heritage Dictionary of the English Language* defines "establishment" as "[a] place of business, including the possessions and employees."[28] The *New Shorter Oxford English Dictionary* defines "establishment" as "[a]n institution or business; the premises or personnel of this."[29] *Webster's Encyclopedic Unabridged Dictionary of the English Language* defines "establishment" as "a place of business together with its employees, merchandise, equipment, etc."[30] *Black's Law Dictionary* defines an "establishment" as "[a]n institution or place of business."[31] It in turn defines "place of business" as "[a] location at which one carries on a business."[32] Finally, the Supreme Court has recognized that the term "establishment" is "normally used in business and in government . . . as meaning a distinct physical place of business."[33]

Based on the unambiguous language of 42 U.S.C. § 12181(7)(E), we conclude that Coca-Cola's vending machines are not "sales establishments" under the plain meaning of that term and therefore are not "places of public accommodation" under Title III of the ADA. We therefore need not consider whether the vending machines are "facilities" under 28 C.F.R. § 36.104.

Although we could end our analysis here, we further note that our conclusion comports with the statute's legislative history and the DOJ's

---

[26] *Establishment*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986).

[27] *Place*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1986).

[28] *Establishment*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (1976).

[29] *Establishment*, THE NEW SHORTER OXFORD ENGLISH DICTIONARY (1993).

[30] *Establishment*, WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE (1989).

[31] *Establishment*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[32] *Place of Business*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[33] *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 496 (1945).

guidance.[34] The statute's legislative history acknowledges that 42 U.S.C. § 12181(7)'s categories are "exhaustive," but cautions that they "should be construed liberally, consistent with the intent of the legislation that people with disabilities should have equal access to the array of establishments that are available to others who do not currently have disabilities."[35] As an example of such liberal construction, a House Report instructs that "although not expressly mentioned, book*stores*, video *stores*, stationery *stores*, pet *stores*, computer *stores*, and other *stores* that offer merchandise for sale or rent are included as retail sales establishments."[36] Likewise, another House Report notes that the category including "a bakery, grocery *store*, clothing *store*, hardware *store*, shopping *center*, or other sales or rental establishment" is "only a representative sample" and that "[o]ther retail or wholesale establishments selling or renting items, such as a book *store*, videotape rental *store*, or pet *store*, would be a public accommodation under this category."[37] Notably, Congress's own examples of such liberal construction confine the term "sales establishment" to actual stores.

Likewise, the DOJ has acknowledged that the categories of "public accommodations" in its regulations "are an exhaustive list," but, like Congress, cautions that the "examples given are just illustrations."[38] As an example, the DOJ notes that "the category 'sales or rental establishments' would include

---

[34] The Supreme Court instructs that the DOJ's guidance in reference to the ADA is entitled to deference. *See Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) ("As the agency directed by Congress to issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b), the Department's views are entitled to deference.").

[35] H.R. Rep. 101-485 (II), 100, 1990 U.S.C.C.A.N. 303, 383.

[36] *Id.* (emphasis added).

[37] H.R. Rep. 101-485 (III), 54, 1990 U.S.C.C.A.N. 445, 477 (emphasis added).

[38] Americans with Disabilities Act Title III Covering Public Accommodations and Commercial Facilities, § III-1.2000, *available at* https://www.ada.gov/taman3.html.

many facilities other than those specifically listed, such as video *stores*, carpet showrooms, and athletic equipment *stores*."[39] Consistent with the statute's legislative history, all the examples provided by the DOJ are actual stores.

In the context of defining the term "shopping center or mall," the DOJ has also shed light on the meaning of the term "sales establishment." The DOJ instructs that "[a] building with five or more 'sales or retail establishments'" qualifies as a "shopping center or mall."[40] Under Magee's interpretation of "sales establishment," any building that contains five vending machines would qualify as a "shopping center or mall," clearly not the intent of the various drafters. That DOJ guidance also, by example, refers to "counters and large windows and check-out aisles" as "special features for sales or rental establishments."[41]

In deciding that Coca-Cola's vending machines in the instant case are not places of public accommodation, we acknowledge the limits of our holding. As the district court recognized, those vending machines may very well be subject to various requirements under the ADA by virtue of their being located in a hospital or a bus station, both of which are indisputably places of public accommodation.[42] Here, however, Magee sued only Coca-Cola, an entity that does not own, lease (or lease to), or operate a place of public accommodation.[43]

Accordingly, the district court's dismissal of Magee's complaint is AFFIRMED.

---

[39] *Id.* (emphasis added).

[40] *Id.* at § III-5.4100.

[41] *Id.*

[42] *See* 42 U.S.C. § 12181(7)(F) (identifying a "hospital" as a "public accommodation"); *id.* § 12181(7)(G) (identifying "a terminal, depot, or other station used for specified public transportation" as a "public accommodation"); *id.* § 12181(10) (identifying "specified public transportation" as, *inter alia*, "transportation by bus").

[43] 42 U.S.C. § 12182(a).