Filed 1/8/21  Thurston v. Ricardo Beverly Hills CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| CHERYL THURSTON et al., | |
| Plaintiffs and Appellants, | E073068 |
| v. | (Super.Ct.No. CIVDS1904354) |
| RICARDO BEVERLY HILLS, INC., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Pacheco, Judge.  Reversed and remanded with directions.

Pacific Trial Attorneys, Scott J. Ferrell and Victoria C. Knowles for Plaintiffs and Appellants.

Darling & Risbrough, Robert C. Risbrough, and Ryan D. Yabko for Defendant and Respondent.

Ricardo of Beverly Hills, Inc. (Ricardo) is a Washington corporation.  It sells luggage and related products at wholesale to resellers, including at least 100 stores in California.  It also sells its products directly to consumers on its website.

1

Cheryl Thurston and others[1] (Thurston) filed this action against Ricardo, alleging that Ricardo's website discriminates against the blind and visually handicapped in violation of the Unruh Civil Rights Act. (Civ. Code, § 51 et seq.)

The trial court granted Ricardo's motion to quash for lack of personal jurisdiction. Thurston appeals.

We apply the law as stated in our recent opinion in *Thurston v. Fairfield Collectibles of Georgia, LLC* (2020) 53 Cal.App.5th 1231. It leads, however, to a somewhat different result. There, we held that the trial court had personal jurisdiction over an out-of-state corporation, because the corporation made eight percent of its sales, totaling some $320,000 to $375,000 a year, through its website to Californians. Here, we hold that there was insufficient evidence that the trial court had personal jurisdiction over Ricardo, because there was no evidence that Ricardo made substantial sales through its website to Californians. However, the trial court abused its discretion by refusing to allow Thurston to conduct discovery relating to personal jurisdiction, which would include discovery into the extent to which Ricardo did make website sales to Californians.

---

[1] The other plaintiffs and appellants are Brittney Mejico, Roy Rios, and Abelardo Martinez, Jr. Because there seems to be no distinction between them that is relevant to this appeal, we refer to them all collectively as Thurston.

I

FACTUAL BACKGROUND

The facts below were shown by the evidence offered in support of and in opposition to the motion to quash.

Ricardo objected to much of Thurston's evidence. The trial court did not rule on these objections. Most, if not all, of them were meritless — e.g., Ricardo objected to information on its own website as hearsay. (See Evid. Code, § 1220.) In any event, when the trial court fails to rule on an evidentiary objection, we must presume that it has been overruled. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 [motion for summary judgment].) In this appeal, Ricardo does not contend that any of its objections should have been sustained.[2] We therefore consider all of the evidence.

Ricardo was originally a California corporation. However, in 2014, the California corporation was merged into a corporation with the same name in the state of Washington. Thus, Ricardo is now a Washington corporation. Its principal place of business is in Washington. It has no physical locations anywhere else in the United States.

Ricardo is primarily a wholesaler. Its products are sold at independent retail stores, including at least 100 stores in Southern California. However, it also makes some

---

[2] In its statement of facts, it asserts that the declaration of Thurston's attorney "lacked foundation and consisted entirely of hearsay." However, it offers no analysis in support of that conclusion. It also does not raise any such contention under a separate heading or subheading, as would be required. (Cal. Rules of Court, rule 8.204(a)(1)(B).)

retail sales directly to consumers through its website. In 2018, ".002% of Ricardo's total sales were received on its website from San Bernardino County."

Ricardo has "Authorized Service Centers" in California.

Ricardo styles itself an "international company" and a "globally recognized leader in quality luggage."

Ricardo's brand incorporates the words "Beverly Hills"; its marketing cultivates associations with the West Coast, California, and Hollywood.

Ricardo's website includes a page of information about California's Proposition 65.

In 2017, Ricardo announced that it was "partnering" with Tile, a California-based company that makes electronic devices for locating lost luggage. Purchasers of Ricardo products, either from designated retailers or from Ricardo's website, would receive a free Tile device. The device would also be available for purchase.

Thurston lives in Southern California. When she attempted to use Ricardo's website, she was in Southern California.

II

STATEMENT OF THE CASE

Thurston filed this action in 2019. She asserted a single cause of action, for violation of the Unruh Civil Rights Act. (Civ. Code, § 51 et seq.)

Thurston alleged that she was blind; that she needed screen reading software to use the Internet; and that Ricardo's website had "access barriers," which interfered with

4

the use of a screen reader and thus prevented blind and visually impaired people from having "full and equal access" to the website.

Thurston affirmatively alleged that she was acting as a "tester," meaning that she visits websites to determine whether they comply with antidiscrimination laws. Nevertheless, she "genuinely want[ed] to avail [herself] of [Ricardo]'s goods and services as offered on [Ricardo]'s website." She had made "several attempts to use and navigate [Ricardo's w]ebsite," but had encountered "accessibility barriers." These barriers had "deterred [her] from purchasing [Ricardo's] products . . . ."

Thurston alleged that the website violated the Americans with Disabilities Act (42 U.S.C. § 12181-12189) (ADA). However, she did not assert a cause of action under the ADA; she merely noted that a violation of the ADA is per se a violation of the Unruh Civil Rights Act. (See Civ. Code, § 51, subd. (f).)

Ricardo filed a "motion to dismiss for lack of personal jurisdiction, improper venue, or in the alternative, forum non conveniens." (Capitalization altered.)

Thurston opposed the motion on the merits. However, she also asked, if the court was inclined to grant the motion, that she be allowed to conduct discovery limited to the jurisdictional issue.

The trial court granted the motion, which it deemed to be a motion to quash. It ruled: "[S]pecific personal jurisdiction is lacking, as Defendant's website, even though interactive, is insufficient to support purposeful availment when Defendant did not direct its website toward California, and fair play and substantial justice does not exist for

5

California to address the compliance of a Washington company's website with the ADA." It declined to allow discovery, because "Plaintiffs do not explain what information is sought . . . ."

## III

## THE APPLICATION OF THE ADA TO A WEBSITE

Preliminarily, Ricardo argues that Title III of the ADA— the portion of the ADA that is relevant to this case — does not apply to a website, unless it has a nexus to a physical place of public accommodation. There is a split of authority on this point. (*Thurston v. Midvale Corp.* (2019) 39 Cal.App.5th 634, 640; compare *Morgan v. Joint Admin. Bd., Retirement Plan of Pillsbury Co. and American Federation of Grain Millers, AFL-CIO-CLC* (7th Cir. 2001) 268 F.3d 456, 459 [nexus to physical place is not required] with *Robles v. Domino's Pizza, LLC* (9th Cir. 2019) 913 F.3d 898, 904-906 [nexus to physical place is required].) Moreover, Thurston argues that this limitation does not apply under the Unruh Civil Rights Act. (See *National Federation of Blind v. Target Corp.* (N.D. Cal. 2007) 582 F.Supp.2d 1185, 1196-1197.)

Ricardo did raise this argument in its motion to quash. However, it was irrelevant. It does not go to personal jurisdiction. It goes to the merits of the action — i.e., whether Ricardo violated the Unruh Civil Rights Act. That is not properly the subject of a motion to quash. While Ricardo styled its motion a motion to dismiss, rather than a motion to quash, it sought dismissal based exclusively on lack of personal jurisdiction and forum non conveniens. The motion did not qualify as a demurrer. (See Code Civ. Proc.,

6

§ 430.60; Cal. Rules of Court, rule 3.1320.) Indeed, but for a statutory amendment in 2002, an argument that goes to the merits, as this one does, would have constituted a general appearance, obviating the motion to quash entirely. (See *Air Machine Com SRL v. Superior Court* (2010) 186 Cal.App.4th 414, 419-428.)

Because this argument was not properly presented below, we decline to decide it in this appeal.

IV

THE EVIDENCE OF PERSONAL JUDISDICTION

We turn, then, to Thurston's contention that the trial court erred by ruling that it lacked personal jurisdiction.

California can exercise personal jurisdiction over a defendant on any basis not inconsistent with the federal or state constitution. (Code Civ. Proc., § 410.10.)

Under the federal constitution, personal jurisdiction requires "'certain minimum contacts with [the State] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."' [Citation.]" (*BNSF Ry. Co. v. Tyrrell* (2017) ___ U.S. ___, ___ [137 S.Ct. 1549, 1558].)

There are two types of personal jurisdiction: "specific or case-linked jurisdiction and general or all-purpose jurisdiction. [Citations.]" (*BNSF Ry. Co. v. Tyrrell*, *supra*, 137 S.Ct. at p. 1558.) General jurisdiction exists when the defendant's "'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.' [Citation.]" (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 139.) By

7

contrast, "'[a] court may exercise specific jurisdiction over a nonresident defendant only if: (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum"' [citation]; and (3) '"the assertion of personal jurisdiction would comport with "fair play and substantial justice"'" [citation].' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062.)

Thurston disclaims any reliance on general jurisdiction. We therefore consider only specific jurisdiction.

"'"'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on" [its] contacts with the forum.' [Citation.] Thus, purposeful availment occurs where a nonresident defendant 'purposefully direct[s]" [its] activities at residents of the forum' [citation], '"purposefully derive[s] benefit" from' its activities in the forum [citation], 'create[s] a "substantial connection" with the forum' [citation], '"deliberately" has engaged in significant activities within' the forum [citation], or 'has created "continuing obligations" between [itself] and residents of the forum' [citation]. By limiting the scope of a forum's jurisdiction in this manner, the '"purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous,"

or "attenuated" contacts . . . .' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at pp. 1062-1063.)

"'"When a defendant moves to quash service of process' for lack of specific jurisdiction, 'the plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction.' [Citation.] 'If the plaintiff meets this initial burden, then the defendant has the burden of demonstrating "that the exercise of jurisdiction would be unreasonable."' [Citation.]" (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1062.)

"When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence. [Citation.] When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record. [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449.)

Recently, this court decided *Thurston v. Fairfield Collectibles of Georgia, LLC*, *supra*, 53 Cal.App.5th 1231. The first-named plaintiff there was the same as here (*id*. at p. 1234); the complaint asserted the same Unruh Civil Rights Act claim, arising out of the blind plaintiffs' alleged difficulties in accessing the goods and services provided by the defendant's website, against a different out-of-state defendant. (*Id*. at p. 1235) There, however, the evidence showed that the defendant made about eight percent of its total sales — and about ten percent of its sales to consumers — to Californians. Its total sales to California addresses were $320,000 to $375,000 a year. (*Ibid*.)

9

We held that the trial court erred by ruling that it did not have specific jurisdiction over the defendant.  (*Thurston v. Fairfield Collectibles of Georgia, LLC*, *supra*, 53 Cal.App.5th at pp. 1239-1242.)  We explained:  "[U]nder California case law, making a substantial number of sales of goods or services to California residents via one's own website constitutes purposeful availment."  (*Id*. at p.1240.)  "Admittedly, the sales must be substantial; they are not enough if they are only 'random, isolated, or fortuitous . . . .' [Citation.]"  (*Ibid*.)

We relied on *As You Sow v. Crawford Laboratories, Inc.* (1996) 50 Cal.App.4th 1859, which had held that making 16 sales over six years to California companies was sufficient to show purposeful availment, even though these were never more than one percent of the defendant's annual sales.  (*Thurston v. Fairfield Collectibles of Georgia, LLC*, *supra*, 53 Cal.App.5th at pp. 1239-1240.)  We added:  "[E]ven assuming *As You Sow* was erroneous in predicating jurisdiction on less than one percent of sales, here [the defendant] made eight percent of its sales to residents of California.  These sales totaled some $320,000 to $375,000 a year.  That is the equivalent of having a brick-and-mortar store in California — a 'virtual store.'  [Citation.]"  (*Id*. at p. 1240.)

Here, by contrast, Thurston failed to show how much of Ricardo's sales were made to Californians.  The only evidence on that point was introduced by Ricardo itself.  It showed that in 2018, 0.002 percent of Ricardo's sales were made through its website to

10

buyers in San Bernardino County.[3]  This isolated statistic raises more questions than it answers.  What proportion of Ricardo's sales are made on its website to buyers in all California counties combined?  And what proportion of its sales are made on its website at all?  But Ricardo did not have the burden of proof; it was Thurston who had the burden of proving that Ricardo was making a substantial number of sales of goods or services to California residents through its website.  This she failed to do.

Thurston asserts that the population of California is 12 percent of the total population of the United States; she asks us to infer that Ricardo makes 12 percent of its website sales to Californians.  However, it would be speculative to conclude that that the ratio of California buyers to American buyers precisely mirrors the ratio of Californians to Americans.  Thurston also asserts that the population of San Bernardino County is 0.66 percent of the population of the United States.  If so, then Ricardo is making disproportionately few of its sales to San Bernardino County, and presumably also disproportionately few to California.

Thurston also argues that the "purposeful availment" analysis is qualitative, not quantitative; thus, a relatively small number of sales to state residents can suffice to establish purposeful availment, as in *As You Sow*.  In principle, we agree.  The analysis is not quantitative, in the sense that there is some bright-line cutoff point.  Nevertheless, as a general rule, the defendant must either have a "'substantial connection'" with the forum

---

**3**      Thurston claims this "is the equivalent of 2/10 of 1 percent . . . ."  It is not.  It is 2/1000 of 1 percent — i.e., 2/100,000 of the total.

or have engaged in "'significant activities'" in the forum. (*Snowney v. Harrah's Entertainment, Inc.*, *supra*, 35 Cal.4th at p. 1063.) "'"[R]andom," "fortuitous," or "attenuated" contacts'" do not meet this standard. (*Ibid.*) When, as here, there is no other evidence of purposeful availment, determining whether the defendant's sales to Californians are "substantial" or "significant" requires at least some consideration of the number of those sales. And when, as here, the evidence shows only that the defendant made 0.002 percent of its sales in the form of website sales to buyers in a single California county, it falls short of proving substantial or significant contacts.

Thurston therefore points to the other asserted contacts between Ricardo and California that she showed below. As we will discuss, these do not call for a different result, in most instances because the controversy does not arise out of these contacts, as specific jurisdiction would require.

First, Ricardo's products are sold by over 100 stores in California. That might suffice to give California jurisdiction over a contract action between Ricardo and one of those stores, or over a product liability action between Ricardo and a person who purchased one of its products from one of those stores. Thurston's claim, however, is related to Ricardo's retail sales on its website, not its wholesale sales to California resellers.

Second, Ricardo has "Authorized Service Centers" in California. Again, Thurston's claim is not related to those service centers.

Third, Ricardo boasts generally about being "international" and "global." However, this does not mean it does business in every country, much less in every state. It evidently refers to the presence that Ricardo has as a result of selling its products to retailers, who then resell them to consumers. Again, Thurston's claim does not arise out of these wholesale sales.

Fourth, Ricardo's marketing seeks to associate its products with California, Hollywood, and Beverly Hills. However, this is as much an appeal to residents of other states, using California's supposed glamor, as it is an appeal to Californians. Moreover, it is consistent with the fact that Ricardo sells to Californians indirectly, through resellers. In any event, Thurston's claim does not arise out of Ricardo's marketing.

Fifth, Ricardo is "partnering" with Tile, a California company. Yet again, Thurston's claim does not arise out of the interaction between Ricardo and Tile.

Sixth and finally, Ricardo has information about Proposition 65 on its website. Thurston characterizes this as a "Proposition 65 warning notice." Her point appears to be that posting a Proposition 65 warning on its website shows that Ricardo is making (or at least intends to make) retail sales to Californians. (See *Quigley v. Guvera IP Pty. Ltd.* (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 134409 at p. 11 [fact that defendant's website included "California-specific privacy policy in order to comply with California law" showed that it "expressly sought consumers in California."].)

The webpage Thurston cites, however, is not a Proposition 65 warning. Rather, it provides background information about what Proposition 65 is and what it requires. The

webpage is five printed pages long.  It states that all of Ricardo's products are "made from durable and safe materials," although they may contain "trace amounts" of specified chemicals, and that they "are in full compliance with all federal laws for product safety." At one point, it shows a sample image of a Proposition 65 warning.  The image, however, could not serve as a Proposition 65 warning applicable to Ricardo's website.  For one thing, it is not a complete warning — it does not specify any particular product or any particular chemical.  (27 Cal. Code Regs. § 25600.2, subd. (b).)  Moreover, when retail sales are being made through a website, it is not enough to post a Proposition 65 warning on a webpage; the warning must either be on the individual product display page, or be displayed to the purchaser as part of the checkout process.  (27 Cal. Code Regs. § 25602, subd. (b).)  "[A] warning is not prominently displayed if the purchaser must search for it in the general content of the website."  (*Ibid*.)

Because the webpage, fairly read, is not a Proposition 65 warning, it is not evidence that Ricardo is making retail sales directly to Californians.  Rather, it reflects the fact that Ricardo sells to Californians indirectly; thus, it wants to reassure California purchasers that a Proposition 65 warning does not mean its products are dangerous.  The webpage even specifically reassures readers who do *not* live in California.

In sum, then, Thurston failed to meet her burden of proving that Ricardo has the necessary minimum contacts with California.

V

JURISDICTIONAL DISCOVERY

Ricardo contends that, if it failed to carry its burden of proof, the trial court should have allowed it to conduct discovery regarding personal jurisdiction.

"In order to meet its burden of proof [citation], [a] plaintiff is entitled to conduct discovery with regard to the issue of jurisdiction before the hearing on [a] motion to quash; e.g., to establish the nature and extent of the defendant's 'contacts' in California. (The hearing date is often continued to facilitate such discovery.) [Citation.] [¶] But a continuance may be denied if there is no showing that discovery would likely produce evidence of additional 'contacts.' [Citation.]" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 3:380, p. 3-111.)

"The granting of a continuance for discovery lies in the discretion of the trial court, whose ruling will not be disturbed in the absence of manifest abuse. [Citation.]" (*Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 487.)

Here, Ricardo was admittedly making at least some sales though its website directly to Californians. Thurston did not know, nor did Ricardo reveal, the volume of these sales. Instead, Ricardo unhelpfully revealed only the percentage of its total sales that were made through its website to San Bernardino County.

Thurston asks us to infer, from Ricardo's failure to make full disclosure, that Ricardo actually does substantial business in California. We decline to do so. (Cf. *Levingston v. Kaiser Foundation Health Plan, Inc.* (2018) 26 Cal.App.5th 309, 317

15

[""[w]ithout more, the disregard or disbelief of the testimony of a witness is not affirmative evidence of a contrary conclusion. [Citations.]' [Citation.]"].) However, it does show that there was some reason to think that discovery would produce additional relevant evidence.

In any event, Thurston had obtained information about Ricardo that was publicly available on the internet, yet had not been able to determine just how much business Ricardo actually did directly with Californians. Under our opinion in *Thurston*, *supra*, this fact was critical. Accordingly, Thurston showed good cause for at least some limited jurisdictional discovery, and the trial court abused its discretion in ruling otherwise.

Ricardo's motion to dismiss also invoked the doctrine of forum non conveniens. In this appeal, however, it does not contend that, even if the trial court had personal jurisdiction, it should have dismissed on this ground. It likewise does not contend that, even if Thurston was otherwise entitled to jurisdictional discovery, the trial court should have granted its motion — and thus denied discovery — based on forum non conveniens. We deem it to have forfeited any such contention.

We therefore conclude that the trial court should have granted a continuance to conduct discovery regarding personal jurisdiction.

VI

DISPOSITION

The order appealed from is reversed. The trial court is directed to allow Thurston to conduct discovery regarding personal jurisdiction, within a specified reasonable time,

16

which it may extend for good cause shown.  It is also directed to allow Ricardo to renew its motion to quash at the end of this time and to allow Thurston to file a new opposition to the motion.  In the interest of justice, each side shall bear its own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.

17