Filed 1/10/24  Camden Systems v. Young CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CAMDEN SYSTEMS, LLC,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>JEFFREY S. YOUNG,<br><br>     Defendant and<br>     Respondent. | B321117<br><br>(Los Angeles County<br>Super. Ct. No.<br>21STCV11537) |

APPEAL from an order of dismissal of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge.  Affirmed.

Law Offices of David M. Wolf and David M. Wolf for Plaintiff and Appellant.

Kaufman Dolowich & Voluck, Vincent S. Green and Steve R. Segura for Defendant and Respondent.

———————————————

Camden Systems, LLC appeals from the order of dismissal entered after the trial court sustained without leave to amend the demurrer filed by Jeffrey Young.  On appeal, Camden Systems argues the trial court erred in holding the second amended complaint failed to state a claim for breach of fiduciary duty based on Young's alleged knowing violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.; ADA).  Because the second amended complaint does not allege Young knew his actions (or inactions) violated the ADA, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Allegations of the Second Amended Complaint*

On March 25, 2021 Camden Systems, in its individual capacity and derivatively on behalf of 409 North Camden, LLC, filed this action against Young, the manager of 409 North Camden, alleging breach of fiduciary duty.  After the trial court sustained demurrers to the complaint and first amended complaint with leave to amend, Camden Systems filed the second amended complaint, again alleging breach of fiduciary duty by Young.[1]

According to the second amended complaint, 409 North Camden was formed in 2016 as a manager-managed limited liability company, and it is the owner of a two-story office building in Beverly Hills (the office building).  Young was the sole

---

[1]      The complaint and amended complaints also named as defendants 409 North Camden and its members and alleged additional causes of action for breach of fiduciary duty, breach of contract, and declaratory relief.  Only the breach of fiduciary duty claim against Young is at issue in this appeal.

2

manager of 409 North Camden since its formation.[2]  Camden Systems became a member of 409 North Camden in 2020, at which point there were 10 members of the company, including Camden Systems.

Camden Systems alleged the elevator in the office building had been inoperable since at least 2016 and, as a result, "disabled persons, including those in wheelchairs, are unable to access the professional offices of the health care providers located on the second floor."  Further, "the elevator being inoperable is violative of the ADA," which requires removal of "barriers to access when doing so is readily achievable."[3]  In addition, "the repair or replacement of the elevator . . . is readily achievable" because the office building is "debt-free" and "worth many millions of dollars and generates hundreds of thousands of dollars of income annually."

---

[2]     While Young is not a member of 409 North Camden in his individual capacity, the second amended complaint alleged he was a co-trustee of a trust that is a member.

[3]     Camden Systems also alleged additional building features that were out of compliance with the ADA, including lack of ramps, accessible parking, and stairway handrails.  On appeal Camden Systems limits its argument to whether the inoperable elevator violated the ADA.  As we discuss below, for existing facilities like the office building, discrimination under the ADA includes the failure to remove an architectural barrier "where such removal is readily achievable."  (42 U.S.C. § 12182(b)(2)(A)(iv); see 28 C.F.R. § 36.304.)  "Readily achievable," in turn, means "easily accomplishable and able to be carried out without much difficulty or expense."  (42 U.S.C. § 12181(9); see 28 C.F.R. §§ 36.104, 36.304.)

3

Young was aware of the inoperable elevator, and in 2020 he hired a certified access specialist to inspect the office building. The specialist's report stated, "If the current health care providers remain as tenants in their current suites, the issue of second floor accessibility must be addressed." Young then retained a law firm to assess whether the inoperable elevator would violate the ADA. The law firm opined that the presence of health care providers on the second floor "'would likely bar the application of the elevator exemption [from liability under the ADA] to the Camden Drive property in its current tenant configuration. . . . [¶] If [a] Plaintiff makes the prima facie showing of discrimination and demands the removal of the barrier to access, the Defendant may assert as an affirmative defense that removal of the barrier is not 'readily achievable.' . . . Whether [the $363,000 estimated cost to repair the elevator] would make the elevator repair 'readily achievable' would be a question for the trier of fact.'"

Young also sent a letter to the members of 409 North Camden stating, "I just want to remind you, as I have discussed with you before, any deficiency under the ADA can result in a potential lawsuit and penalties if a disabled person encounters a deficiency while on the property." (Boldface omitted.)

Camden Systems alleged Young's awareness of the inoperative elevator and the elevator's potential noncompliance with the ADA established that Young engaged in a knowing violation of law and, thus, breached his fiduciary duty to 409 North Camden. The second amended complaint sought monetary damages and an injunction requiring repair or replacement of the elevator.

B.     *The Demurrer to the Second Amended Complaint*

On December 16, 2021 Young filed a demurrer to the fiduciary duty cause of action in the second amended complaint. He argued the allegations that he was aware of the building's inoperable elevator and other deficiencies were insufficient to state a claim for a knowing violation of law and, therefore, did not state a claim for breach of fiduciary duty.  Further, the second amended complaint failed to allege he acted in bad faith, which was necessary to overcome the presumption of the business judgment rule, which applied under 409 North Camden's operating agreement and statutory and common law.[4]  Finally, Young argued the second amended complaint did not allege any harm from the alleged ADA violations and Camden Systems lacked standing to sue because the alleged violations existed prior to the formation of 409 North Camden and Camden System's membership in the company.

---

[4]     Camden Systems argued in its opposition that although the operating agreement provided that a manager's fiduciary duties were governed by the business judgment rule, Camden Systems was not bound by that provision because Corporations Code section 17701.10, subdivision (e), requires for modification of a manager's fiduciary duties that the members give their "informed consent" to the modification, and Camden Systems had adequately alleged it had not given its informed consent.  (See *ibid*. ["The fiduciary duties of a manager to a manager-managed limited liability company and to the members of the limited liability company . . . shall only be modified in a written operating agreement with the informed consent of the members."].)  Further undesignated statutory references are to the Corporations Code.

5

C.    *The Trial Court's Ruling*

After a hearing, on February 4, 2022 the trial court sustained without leave to amend the demurrer to the fiduciary duty cause of action against Young.  The court found 409 North Camden's operating agreement, attached to the second amended complaint, limited the fiduciary duties of the manager so that the manager would not be liable for honest mistakes of judgment or actions taken in good faith that were reasonably believed to be in the best interests of the company.  Further, the second amended complaint failed to allege Young acted in bad faith.  The court found in the alternative that the second amended complaint did not allege damages caused by Young's actions because the elevator had been inoperable prior to formation of 409 North Camden.  Accordingly, Young's actions or inactions could not have caused any diminution in the office building's value.

On April 27, 2022 the trial court signed and filed an order of dismissal with prejudice of the fiduciary duty cause of action against Young.  At Camden Systems's request, the clerk subsequently entered a dismissal without prejudice of the remaining causes of action against Young.  Camden Systems timely appealed.

**DISCUSSION**

A.    *Governing Law and Standard of Review*

With some enumerated exceptions, where, as here, a limited liability company is established as a manager-managed company, "any matter relating to the activities of the limited liability company is decided exclusively by the managers." (§ 17704.07, subd. (c)(1).)  A manager owes fiduciary duties of loyalty and care to the company and its members.  (§ 17704.09,

6

subds. (a), (f)(1).) However, the manager's duty of care is "limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law." (*Id.*, subds. (c), (f)(1).)[5]

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 209; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) "However, we are not required to accept the truth of the factual or legal conclusions pleaded in the complaint." (*Marina Pacific Hotel and Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 105; accord, *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016)

---

[5] A member in a limited liability company may bring a derivative lawsuit on the company's behalf when the manager refuses to do so. (See *Beachcomber Management Crystal Cove, LLC v. Superior Court* (2017) 13 Cal.App.5th 1105, 1118.) In such a case, the member must "allege[ ] in the complaint with particularity the plaintiff's efforts to secure from the managers the action the plaintiff desires or the reasons for not making that effort, and allege[ ] further that the plaintiff has either informed the limited liability company or the managers in writing of the ultimate facts of each cause of action against each defendant or delivered to the limited liability company or the managers a true copy of the complaint that the plaintiff proposes to file." (§ 17709.02, subd. (a)(2).) The parties do not address whether Camden Systems pleaded these facts with particularity.

7

1 Cal.5th 994, 1010 ["""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law."""].)

B.   *The Trial Court Did Not Err in Sustaining Young's Demurrer*

The second amended complaint did not allege Young breached his fiduciary duties by engaging in grossly negligent or reckless conduct or intentional misrepresentation.  Instead, Camden Systems contends Young breached his fiduciary duty to the company by engaging in a knowing violation of law.  Specifically, Camden Systems argues Young committed a knowing violation of law by allowing the office building to be out of compliance with the ADA, including by failing to fix the inoperable elevator.  The second amended complaint did not adequately allege a knowing violation by Young.[6]

Title III of the ADA prohibits discrimination against disabled individuals in places of public accommodation. (42 U.S.C. § 12182(a).)[7]  "The purpose of Title III is '"to bring

---

[6]   Because we conclude the second amended complaint did not adequately allege a knowing violation of the ADA by Young, we do not reach Young's argument the business judgment rule applies under the operating agreement.  A dismissal entered after a demurrer has been sustained without leave to amend "will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground."  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord, *Ko v. Maxim Healthcare Services, Inc.* (2020) 58 Cal.App.5th 1144, 1150.)

[7]   Title III of the ADA states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

8

individuals with disabilities into the economic and social mainstream of American life . . . in a clear, balanced, and reasonable manner.  Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities.'" (*Martinez v. San Diego Credit Union* (2020) 50 Cal.App.5th 1048, 1059-1060 (*Martinez*).) Consistent with this purpose, Title III sets forth specific criteria for accessibility of physical facilities of public accommodations.

"Congress adopted two distinct standards for regulating building accessibility: one to apply to facilities existing before January 26, 1993, and the other to apply to facilities newly constructed or altered on or after January 26, 1993.  (42 U.S.C. §§ 12182(b)(2)(A)(iv), 12183(a).)" (*Californians for Disability Rights v. Mervyn's LLC* (2008) 165 Cal.App.4th 571, 584 (*Californians for Disability Rights*).)  As a House Committee on Judiciary report explained, "[T]he distinction between existing and new facilities 'reflects the balance between the need to provide access for persons with disabilities and the desire to impose limited cost on businesses.  Because retrofitting existing structures to make them fully accessible is costly, a far lower standard of accessibility has been adopted for existing structures.' (H.R.Rep. No. 101-485(III), 2d Sess., p. 60 (1990).)" (*Ibid.*)

For existing facilities, such as the one at issue here, discrimination is defined to include "a failure to remove architectural barriers . . . where such removal is readily

---

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C. § 12182(a).)

achievable." (42 U.S.C. § 12182(b)(2)(A)(iv); see 28 C.F.R. § 36.304.) "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable, factors to be considered include—[¶] (A) the nature and cost of the action needed under this chapter; [¶] (B) the overall financial resources of the facility or facilities involved in the action; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; [¶] (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and [¶] (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity." (42 U.S.C. § 12181(9); see 28 C.F.R. §§ 36.104, 36.304.)[8]

To establish a violation of the ADA, "a plaintiff must show: (1) a covered disability; (2) 'the defendant is a private entity that

---

[8] In contrast, "new and altered facilities must be 'readily accessible and usable,' and must comply with extensive and detailed regulations." (*Californians for Disability Rights, supra*, 165 Cal.App.4th at p. 584; see 42 U.S.C. § 12183(a).) There is an exception for new and altered facilities where "an entity can demonstrate that it is structurally impracticable" to meet accessibility requirements. (28 C.F.R. § 36.401(c)(1).) However, "[f]ull compliance will be considered structurally impracticable only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features." (*Ibid.*)

owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [the] disability.'" (*Martinez, supra*, 50 Cal.App.5th at p. 1060.)  As to the third element, a plaintiff can meet the burden to show discrimination (denial of an accommodation) based on a disability by showing "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable."  (42 U.S.C. § 12182(b)(2)(A)(iv); see *Medina-Rodriguez v. Farmacia Medina Inc.* (D.P.R. 2017) 302 F.Supp.3d 479, 484.)  A place of public accommodation is defined to include the office of a health care provider.  (42 U.S.C. § 12181(7)(F).)

At trial, the plaintiff bears the initial burden to produce evidence that removal of an existing architectural barrier is readily achievable, but once a plaintiff meets its burden of production, "[t]he defendant bears the ultimate burden of proving that removal of an architectural barrier is not readily achievable, as an affirmative defense."  (*Californians for Disability Rights, supra*, 165 Cal.App.4th at p. 592.)  Federal courts have found the burden on a plaintiff to allege a prima facie claim under federal pleading standards requires the plaintiff to allege "a plausible claim that their removal [of architectural barriers] is readily achievable."  (*Medina-Rodriguez v. Fernandez Bakery, Inc.* (D.P.R. 2017) 255 F.Supp.3d 334, 343 ["This Court finds it plausible that removing the alleged barriers is readily achievable, including modifying parking lot spaces, adding seating in the food court accessible to persons with disabilities, and adding grab bars and accessible restroom signs."]; accord, *Melo v. South Broadway Law Realty Trust* (D. Mass., Feb. 1, 2016, No. 1:15-CV-13475-FDS) 2016 Lexis 11583, at *5 ["Here, the complaint alleges that

11

as to each of the 23 alleged violations, removal of the barrier is 'readily achievable and can be accomplished and carried out without much difficulty or expense.' . . . Given the nature of the violations alleged, that is at least plausible."].)

Camden Systems argues the second amended complaint sufficiently pleaded Young's breach of fiduciary duty based on a knowing violation of law because it alleged Young knew the offices of a health care provider were located on the second story of the office building (thus bringing the building within the definition of a public accommodation under the ADA); Young knew the elevator was inoperable and therefore constituted an architectural barrier under the ADA; and Young refused to repair the elevator to bring the building into compliance with the ADA. The second amended complaint further alleged the repair of the elevator was readily achievable because 409 North Camden "had the ability to pay for the cost of repairing or replacing the elevator."

These allegations, if made by a person with a disability who was denied access, may state a claim under the ADA. However, they do not subject Young to liability for breach of fiduciary duty for knowingly violating the law because there are multiple contingencies that must be met before a person in Young's position would know he was violating the law. Camden Systems alleges on information and belief that the inoperable elevator and other accessibility issues "are violative of the ADA," but the supporting factual allegations do not show Young knew a violation of the ADA had occurred. The accessibility specialist's report states only that if the health care provider remains a second-floor tenant, "'accessibility must be addressed.'" Likewise, the attorney's report opined certain tenants "'likely'" qualify as

12

healthcare providers, which would "'likely'" require an elevator; however, if a person with a disability were to demand repair of the elevator, 409 North Camden could make a showing a repair was not readily achievable, which would "'be a question for the trier of fact.'" Rather than showing Young knew there was an ADA violation, these opinions informed Young only of potential liability under the ADA.

In fact, the only allegation in the second amended complaint directly evidencing Young's state of mind was his letter to the members of the company that stated "'*any* deficiency under the ADA *can* result in a *potential* lawsuit and penalties *if* a disabled person encounters a deficiency while on the property.'" (Italics added and boldface omitted.) This language establishes only that Young knew of potential liability under the ADA, not that he knew there had been a violation of law.

The structure of the ADA itself precludes the inference Young knew an ADA violation occurred in the existing office building absent additional factual allegations because the ADA requires a case-by-case analysis to determine whether a person with a disability has been denied access as a result of a physical barrier, and if so, whether removal of the physical barrier is readily achievable. (See *Californians for Disability Rights, supra*, 165 Cal.App.4th at p. 577 ["removal of barriers to access is not readily achievable *in this instance*, and thus not legally mandated"], italics added; *Disability Support Alliance v. Heartwood Enterprises, LLC* (8th Cir. 2018) 885 F.3d 543, 548 [explaining with respect to whether external ramp installation was readily achievable, "'whether removal of a barrier is readily achievable is subject to a case by case inquiry'"]; *Andrews v. Blick Art Materials, LLC* (E.D.N.Y. 2017) 268 F.Supp.3d 381, 403-404

13

["The defendant's principal complaint appears to be that it wants there to be black-and-white rules for ADA compliance, and here, there may be shades of gray. But the anti-discrimination provisions the defendant is accused of violating are not simple checklists of clear-cut rules—they are standards that are meant to be applied contextually and flexibly."]; see also *Martinez, supra,* 50 Cal.App.5th at pp. 1072-1073 [""[T]he ADA and its implementing regulations are intended to give public accommodations maximum flexibility in meeting the statute's requirements."]; *Robles v. Domino's Pizza, LLC* (9th Cir. 2019) 913 F.3d 898, 908 [same].)[9]

C.   *The Trial Court's Denial of Leave to Amend Was Not an Abuse of Discretion*

A trial court abuses its discretion by sustaining a demurrer without leave to amend where "'there is a reasonable possibility that the defect can be cured by amendment.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "'The plaintiff has

---

[9]   Our conclusion that Camden Systems has not adequately alleged a knowing violation of the ADA to state a claim for Young's breach of fiduciary duty under section 17704.09, subdivision (c), does not mean the allegations would not have been sufficient to support a punitive damages award for violation of the ADA, which requires a plaintiff allege a defendant engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." (42 U.S.C. § 1981a(b)(1); see *Kolstad v. American Dental Ass'n* (1999) 527 U.S. 526, 534; *EEOC v. AutoZone, Inc.* (7th Cir. 2013) 707 F.3d 824, 835.) That question is not before us in this appeal.

14

the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal.'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132; see *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

Camden Systems asserts it can cure the defects in the second amended complaint by adding allegations that Young had discretion under the operating agreement to repair the elevator. But the proposed amendment would not cure the absence of sufficient factual allegations that Young engaged in a knowing violation of the ADA. Accordingly, Camden Systems has not met its burden to show it could amend the complaint to cure the legal deficiencies in the breach of fiduciary duty cause of action.

## DISPOSITION

The order of dismissal is affirmed. Young is to recover his costs on appeal.

FEUER, Acting P.J.

We concur:

MARTINEZ, J.          EVENSON, J.*

---

*        Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15